UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SMASH ENTERPRISES PTY LTD., an Australian corporation, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Cause No. 4:16-cv-00490 |
| URMAN, INC., a Delaware corporation; and MANUEL DEL CASTILLO, an individual, | § § § § | Hon. Alfred H. Bennett<br>[No Oral Argument Requested Unless Required By The Court] |
| Defendants. | § § | |
| AND RELATED COUNTERCLAIM | § | |

**PLAINTIFF AND COUNTERCLAIM DEFENDANT SMASH ENTERPRISES PTY LTD.'S MOTION TO DISMISS AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P 12(b)(6)**

Plaintiff and Counterclaim Defendant Smash Enterprises Pty Ltd. ("Smash") respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss count 1 through count 4 in Defendant and Counterclaim Plaintiff Urman, Inc.'s Amended Counterclaim. The Amended Counterclaim fails to state a claim upon which relief can be granted against for breach of contract (count 1), for tortious interference with business relations (count 2), for violations of the Texas Uniform Trade Secrets Act (count 3), and for violations of the federal Computer Fraud and Abuse Act (count 4).

///

///

///

///

1

This motion is supported by the memorandum of points and authorities and the files and records in this case.

Dated:  April 28, 2016                        Respectfully Submitted

                                                     HEATH & STEINBECK, LLP

By:  _/s/ *Steven A. Heath*_____
           Steven A. Heath (admitted *pro hac vice* and
           'attorney-in-charge')
           5777 W. Century Blvd.
           Suite 1670
           Los Angeles, California 90045
           Tel:     (213) 335-6245
           Fax:     (213) 335-6246
           saheath@heathsteinbeck.com
           *Attorneys for Plaintiff and Counterclaim*
           *Defendant Smash Enterprises Pty. Ltd.*

## <u>TABLE OF CONTENTS</u>

I.     SUMMARY ...................................................................................................1

II.    FACTUAL ALLEGATIONS ........................................................................3

    A.  Smash's Amended Complaint Against Urman And Del Castillo ........................3

    B.  Urman's Amended Counterclaim Against Smash................................................5

III.   STANDARD OF REVIEW ..........................................................................7

IV.  URMAN FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ...............7

    A.  Applicable Law ...............................................................................................7

    1. Urman Does Not Allege A Violation Of Paragraph 12...................................8

    2. Urman Does Not Allege A Violation Of Paragraph 8.2................................10

V.   URMAN FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS ...................................................................11

    1. Urman's Tortious Interference Claim Is Not Plausible................................11

    2. Urman Does Not Demonstrate That Smash
    Willfully And Intentionally Interfered With Existing Customer Contracts .....14

VI.  URMAN FAILS TO STATE A CLAIM UNDER THE TEXAS UNIFORM TRADE SECRETS ACT ..............................................................................15

VII. URMAN FAILS TO STATE A CLAIM FOR CONSPIRACY TO VIOLATE THE COMPUTER FRAUD AND ABUSE ACTA ...........................................16

VIII. CONCLUSION.............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

### <u>Federal Authority</u>

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................7

*Bell Atlantic Co. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................7

*City of Del Rio, Texas,*
444 F.3d 417 (5th Cir. 2006), *cert. denied* 549 U.S. 825 (2006).................................7

*Collins v. Morgan Stanley Dean Witter,*
224 F.3d 496 (5th Cir 2000) .....................................................................................7

*Delhomme Industries, Inc. v. Houston Beechcraft,*
669 F.2d 1049, (5th Cir. 1982) ...............................................................................15

*Fiber Sys. Int'l, Inc. v. Roehrs,*
470 F.3d 1150 (5th Cir. 2006) ................................................................................16

*Nexans Wires S.A. v. Sark-USA, Inc.,*
319 F.Supp.2d 468 (S.D.N.Y. 2004).......................................................................17

*Pendleton v. Prairie View A & M Univ,*
121 F.Supp.3d 758 (S.D. Tex. 2015) ......................................................................12

*Quantlab Techs. Ltd (BVI) v. Godlevsky,*
719 F.Supp.2d 766 (S.D. Tex. 2010).................................................................16,17

*Specialties of Mex, Inc. v. Masterfoods USA,*
2010 WL 2488031 (S.D. Tex., June 14, 2010)........................................................11

*Trademotion, LLC v. Marketcliq, Inc.,*
857 F.Supp.2d 1295 (M.D. Fla 2012)......................................................................17

*United States ex rel. Riley v. St Luke's Episcopal Hosp.,*
355 F.3d 370 (5th Cir. 2004) ................................................................................7,9

*Vacation Club Servs, Inc. v. Rodriguez,*
2010 WL 1645129 (M.D. Fla. April 22, 2010)........................................................17

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page No.</u>

**<u>State Authority</u>**

*All Am. Tel, Inc. v. USLD Commc'ns*,
291 S.W.3d 518 (Tex. App. Fort Worth 2009)................................................................. 11

*Browning-Ferris, Inc. v. Reyna*,
865 S.W.2d 925, 927 (Tex. 1993)..................................................................................... 14

*Duncan v. Cessna Aircraft Co.*,
665 S.W.2d 414 (1984)..................................................................................................... 16

*Texaco, Inc. v. Pennzoil Co.*,
729 S.W.2d 768 (1987)..................................................................................................... 14

**<u>Rules And Statutes</u>**

18 U.S.C. § 1030.............................................................................................................. 16

Fed. R. Civ. P (12(b)(6).....................................................................................................5

Tex. Bus & Com. Code Ann. § 1.301 ............................................................................. 16

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Plaintiff and Counterclaim Defendant Smash Enterprises Pty Ltd. ("<u>Smash</u>") respectfully submits the following memorandum of points and authorities in support of its motion to dismiss count 1 through count 4 in Defendant and Counterclaim Plaintiff Urman, Inc.'s ("<u>Urman</u>'s") Amended Counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.  <u>SUMMARY</u>

This lawsuit arises out of a written distribution agreement for consumer goods (the "<u>Agreement</u>") by and between Smash, an Australian corporation based in the State of Victoria, Australia, and Urman, a Delaware corporation based in The Woodlands, Texas.  Smash filed this lawsuit because Urman has received more than $1 million of goods, but refuses to pay for them.

After receiving Urman's original Counterclaim, Smash filed a motion seeking to dismiss Urman's first claim for breach of the Agreement and second claim for tortious interference with business relations.  In response, Urman filed an Amended Counterclaim attempting to address the deficiencies identified in Smash's motion.  The Amended Counterclaim asserts additional claims under the Texas Uniform Trade Secrets Act, the federal Computer Fraud and Abuse Act ("<u>CFAA</u>"), and for tortious interference with a Confidentiality Agreement between Urman and Alejandro Ordonez, a former Urman employee.  Urman has also filed a Third Party Complaint against Ordonez, who has not yet been served.

Having reviewed Urman Amended Counterclaim, and for the reasons set forth below, Smash now seeks dismissal of counts one, two, three, and four, as follows:

<u>First</u>, with respect to the first claim for breach of the Agreement, Urman's Amended Counterclaim fails to correct the deficiencies identified in Smash's original motion to dismiss.

That is, Urman continues to base its claim on a false premise, namely, that pursuant Paragraph 12 of the Agreement, Smash agreed that "all information" that Urman provided to it under their contractual relationship was "confidential information and not to be used by Smash." Urman's position simply misstates the provision. Paragraph 12 clearly provides that a party's information is confidential ***only if*** the disclosing party "identifies such information as confidential or proprietary." This is a significant limitation as to the confidentiality of information exchanged by the parties, but one which Urman continues to ignore. The fact that Urman's <u>Amended Counterclaim</u> fails to address this fundamental deficiency is particularly telling. The Court can and should grant Smash's motion to dismiss the first counterclaim without leave to amend.

<u>Second</u>, Urman's breach of contract counterclaim is independently flawed because Urman's Amended Counterclaim does not allege facts showing that it ever designated information as confidential in compliance with Paragraph 12. This, again, is a deficiency that Smash identified in its motion to dismiss the original Counterclaim, but one which Urman's Amended Counterclaim fails to address or cure. Because Urman cannot and has not alleged when and how it designated its "customer list and customer contacts" as confidential information, as Paragraph 12 requires, then any breach of contract claim based on that paragraph necessarily fails. Similarly, and lacking a predicate violation of Paragraph 12, Urman's claim that Smash has violated Section 8.8 (which requires Smash to act in good faith) equally fails.

<u>Third</u>, Urman's counterclaim for tortious interference with business relations equally fails. Above all, Urman's tortious interference theory is implausible: Urman alleges that Smash conspired with Ordonez to obtain a copy of Urman's customer list, and then started to contact Urman's customers to steal orders. However, the emails that Urman attaches to its Amended Counterclaim demonstrate that Smash copied Urman on the communications sent to the customers.

2

This is fundamentally incompatible with Urman's theory that Smash surreptitiously stole the customer list and started to contact customers on its own.  Urman was 'in the loop' at all times, and knew that Smash was contacting customers for purposes of transitioning the relationship in the wake of the Agreement's termination.  Separately, the Amended Counterclaim does not allege that Smash engaged in intentional interference with <u>existing</u> relations between Urman or customers, or that Smash proximately caused any harm that Urman claims to have suffered.

<u>Fourth</u>, the Court should dismiss Urman's claim brought under the Texas Uniform Trade Secrets Act. Under Paragraph 25 of the Agreement, the parties agreed that Australian law would apply to both the interpretation of the Agreement and their resulting "relationship."  Having contractually agreed to Australian law, Urman is barred from bringing claims under Texas law.

<u>Fifth</u>, Urman's claim under the CFAA is flawed for multiple reasons.  As a threshold matter, the Amended Counterclaim does not specifically allege the formation of an agreement and common activities undertaken in furtherance of a conspiracy.  Substantively, the claim is flawed because the Amended Counterclaim fails to allege that Ordonez took information from a "protected computer" and fails to allege a cognizable loss under the CFAA.

In light of the above, and for the reasons set forth below, Smash requests that the Court grant its motion to dismiss and without leave to amend.


## II.    <u>FACTUAL ALLEGATIONS</u>

### A.    <u>Smash's Amended Complaint Against Urman And Del Castillo</u>

Smash filed its Original Complaint against Urman on February 24, 2016 and filed its operative Amended Complaint on March 31, 2016.  (Dkt Nos. 1, 10).  Smash is an Australian corporation based in the State of Victoria, Australia.  (Am. Complaint, ¶ 1.)  Urman is a Delaware

corporation based in The Woodland, Texas, and Del Castillo is Urman's chief executive officer and president.  (Id. ¶ 3.)  The Complaint also alleges that Del Castillo is Urman's alter ego.  (Id. ¶¶ 4-5.)

Smash is a leading global brand for consumer goods, including 'back to school' product, food storage products, beverage container, stationery, and dining products.  (Id. ¶ 9.)  While the company is based in Australia, it distribution network reaches to Europe, Asia, and the United States.  (Id. ¶ 10.)

Effective July 15, 2011, Smash and Urman entered into an International Distribution Agreement (the "Agreement").[1]  (Id. ¶ 11; Dkt. No. 10-1, Exh. A.)  The Agreement is attached to Smash's Amended Complaint as Exhibit A.  It provides for Urman to be Smash's exclusive distributor of Smash's 'Back to School Range' and 'Nude Food Movers Range' within the United States (for a period of 2 years) and Mexico, Central America, and South America (for a period of 3 years).  (Am. Complaint, ¶ 12.)  The Agreement's initial term was from July 15, 2011 to June 2, 2014, and it was renewed by virtue of the parties' subsequent conduct and agreements.  (Id. ¶ 13.)

Smash brought this lawsuit after Urman fell behind on its financial obligations.  Paragraph 6.3 of the Agreement requires Urman to pay 30% of the purchase price upon Smash's confirmation of a particular order, with the balance payable within 30 days of Urman's receipt of necessary documentation relating to each order.   (Id. ¶ 14.)  Paragraph 6.3 specifically provides the following:

> 6.3    All Products purchased by the Distributor hereunder shall be confirmed by the Company upon the receipt of the purchase order in terms of section 5.3.  Payment shall be made by the Distributor by 30% deposit as advance payment with bank to bank telegraphic transfer by the Distributor to the Company at the time of the Company confirming the order, with the balance payable not more

---

[1] In the Agreement, Smash is defined as the "Company" and Urman as the "Distributor."

> than 30 days after the Distributor has received the full set of scanned documents relating to each shipment.  These terms shall be reviewed after the first anniversary of this Agreement.

Between February 2015 and October 2015, Urman accrued an outstanding balance of $1,594,057.17.  (Id. ¶ 17.)  At present, Urman owes Smash $1,022,098.65, excluding attorney's fees, interest, and costs.  (Id. ¶ 18; Dkt. No. 10-1, Exh. B.)

On December 14, 2015, and pursuant to Paragraph 14.1(ii) of the Agreement, Smash sent an email formally notifying Urman that it was in breach of its financial obligations.  (Am. Complaint ¶ 20; Dkt. No. 10-1, Exh. C.)  Paragraph 14.1 specifically provides as follows:

> 14.1   Notwithstanding anything to the contrary contained in Clause 4, this Agreement shall terminate as follows:
> […]
> (ii)   immediately upon notice by any adversely affected party if a party materially breaches any of the terms and conditions of this Agreement and does not cure such breach within thirty (30) days;

Accordingly, under the Agreement, Urman had 30 days in which to cure its breach and make the required payment in full.  (Am. Complaint ¶ 22.)  Urman failed to make any payment.  (Id.)

On January 19, 2016, Smash notified Urman that in light of its failure to cure its breach and bring its account current, Smash was terminating the Agreement.  (Id., Dkt. No. 10-1, Exh. D.)  As a result, Smash alleges a claims for breach of contract under the United Nations Convention on Contracts for the International Sales of Goods ("CISG"), breach of contract under Australian law, promissory estoppel, and accounts stated.  (Am. Complaint, ¶¶ 24-43.)

### B.   Urman's Amended Counterclaim Against Smash

Urman filed its Answer to the Complaint and its Original Counterclaim on March 10, 2016.  (Dkt. No. 7.)  Urman initially asserted two Counterclaims, for (1) breach of Paragraph 12 of the Agreement and (2) tortious interference with business relations.  Urman's pleadings otherwise confirms the validity of the Agreement and expressly references it in support of its counterclaims.

5

(Id. ¶ 39.)  On April 11, 2016, and in response to Smash's then-pending motion to dismiss under Rule 12(b)(6), Urman filed its operative Amended Counterclaim.  (Dkt. No. 11.)  That pleading asserts four counts against Smash:  (1) breach of Paragraph 12 and Paragraph 8.8 of the Agreement; (2) tortious interference with business relations; (3) violations of the Texas Uniform Trade Secrets Act; (4) violations of the CFAA; and (5) tortious interference with a Confidentiality Agreement between Urman and former employee Ordonez.

Urman's first counterclaim is based on the assertion that, under Paragraph 12 of the Agreement, "Smash agreed that all information disclosed by Urman to Smash, including Urman's customer lists and customer contacts, was confidential information and not to be used by Smash." (Id. ¶ 53.)  Urman alleges that Smash breached Paragraph 12 and Paragraph 8.2 of the Agreement (which requires Smash to act in good faith toward Urman) because "Smash wrongfully obtained Urman's customer contact list which it knew was confidential information belonging to Urman." (Id. ¶ 94.)  Urman's tortious interference counterclaim asserts that Smash has been contacting Urman's customer "to interfere with the existing business relationships between Urman and its customers, including HEB, Walgreens, and The Container Store."  (Id. ¶ 105.)  Urman's claim under the Texas Uniform Trade Secrets Act alleges that "Smash misappropriated Urman's trade secret by convincing Ordonez to take Trade Secret information and deliver it to Smash."  (Id. ¶ 111.)  Urman's claim against Smash under the CFAA is based on the theory that "Ordonez conspired with Smash to obtain Urman's customer contacts which were stored on Urman's computer system."  (Id. ¶ 123.)  Urman's second tortious interference claim alleges that Smash's conduct interfered with a Confidentiality Agreement between Ordonez and Urman.  (Id. ¶ 134.)

As demonstrated below, the allegations supporting Urman's first, second, third, and fourth counterclaims are insufficient to survive a motion to dismiss under Rule 12(b)(6).

III.   **STANDARD OF REVIEW**

Rule 12(b)(6) allows a party to move to dismiss on the basis that a complaint fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. (12(b)(6).  To withstand a motion to dismiss brought under Rule 12(b)(6), a plaintiff must allege "more than an unadorned, the defendant-unlawfully-harmed-me-accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, in order to defeat a motion to dismiss, a plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Co. v. Tomboys*, 550 U.S. 544, 555 (2007).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that the substance of its claim goes "across the line from conceivable to plausible."  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief."  *City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied* 549 U.S. 825 (2006).

In addition to the complaint, a court may review documents attached to the complaint and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).  If an exhibit attached to the complaint contradicts an allegation in the complaint, then the exhibit controls.  *United States ex rel. Riley v. St Luke's Episcopal Hosp*. 355 F.3d 370, 377 (5th Cir, 2004).  This analysis is particularly relevant when considering Urman's counterclaims.

IV.   **URMAN FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT**

    A.   **Urman's Claim For Breach Of Contract Is Flawed**

Urman's first counterclaim alleges that Smash breached the Agreement.   Specifically,

Urman (1) acknowledges that the parties entered into the Agreement; (2) asserts that Paragraph 12 of the Agreements provide for the "protection of confidential information"; (3) asserts that Paragraph 8.2 of the Agreement requires Smash to act toward Urman dutifully and in good faith; and (4) alleges that Smash breached those provisions "when it used information that it knew was confidential information belonging to Urman." (Am. Counterclaim ¶¶ 90-98.) These allegations do not cure the pleading deficiencies set forth in Smash's motion to dismiss Urman's Original Complaint, and, for the reasons set forth below, the Court is entitled to dismiss Urman's first counterclaim with prejudice.

### 1.  Urman Does Not Allege A Violation Of Paragraph 12

Urman's Amended Counterclaim persists in misstating the Agreement's plain language. Urman's original Counterclaim alleged, incorrectly, that under Paragraph 12 Smash agreed that "*all information* disclosed by Urman to Smash" was "confidential information and not to be used by Smash." (Counterclaim ¶ 40.) Urman's Amended Counterclaim contains the same incorrect allegation. (Am. Counterclaim ¶ 53.) As detailed in Smash's original motion to dismiss, a cursory review of the Agreement confirms that Paragraph 12 does not state that "all" information that Urman disclosed to Smash is "confidential." Instead, Paragraph 12 provides that a party must specifically designate information as "confidential or proprietary" in order for the information to be subject to Paragraph 12's safeguards, as follows:

> 12.    Proprietary Information
>
> 12.1    Each party ("Disclosing Party") agrees that all *Information (as defined below)* disclosed to it by the other party ("Receiving Party") constitutes confidential and trade secret information of the Disclosing Party, which shall be held and maintained in confidence; and the Receiving Party agrees that without the prior written consent of the Disclosing Party, it shall not disclose to any third party any Information received directly or indirectly from the Disclosing Party; nor will it use or exploit any of the Information except as and to the extent necessary to perform its obligations pursuant to this

Agreement.  The obligations under this Clause 12 shall remain in force for the term of this Agreement and shall survive the expiration or termination of this Agreement.  (Emphasis added.)

Thus, Paragraph 12.1 provides that "all Information" exchanged under the Agreement "shall be held and maintained in confidence."  The term "Information" is defined in Paragraph 12.2, as follows:

> 12.2  For the purposes of this Agreement, ***the term "Information" means*** any information in whatever form and however communicated relating to or concerning the Products, the Company, the Company's affiliates or the business, products, customers, prospective customers, marketing strategies, technology, employees, financial condition or prospect of the Company and/or its affiliates ***provided, however, the Disclosing Party identifies such information as confidential or proprietary.  The Disclosing Party shall confirm any oral identification in writing to Receiving Party within fifteen (15) days of the oral disclosure***.  (Emphasis added.)

In light of the above, Urman's first amended counterclaim for breach of the Agreement necessarily fails.  <u>First</u>, Urman's allegations differ from what the Agreement actually says.  Rather than giving blanket protection to "all information" that the parties exchange, Paragraph 12 states that only material defined as "Information" is confidential and proprietary.  Where, as here, an exhibit contradicts the allegations in a pleading, then the exhibit controls.  *St Luke's Episcopal Hosp.*, 355 F.3d at 377.  Urman cannot now rewrite the Agreement for purposes of asserting a counterclaim.  The fact that Urman persists, in its Amended Counterclaim, in misstating the Agreement's terms confirms that Smash's motion should be granted without leave to amend.

<u>Second</u>, and independently, Urman's breach of contract counterclaim fails to state how or when Urman identified information as confidential, as the Agreement requires.  Paragraph 12.2 requires a party to affirmatively "identify" information as "confidential or proprietary."  The Agreement clearly contemplates that any such identification will take place in writing, inasmuch it states that "any oral identification" of "Information" must be confirmed in writing "within fifteen

9

(15) days of the oral disclosure."  Hence, for Urman to be able to state a claim for breach of any obligation arising out of Paragraph 12, it must necessarily allege when and how it designated its "customer list and customer contacts" as "Information" subject to the protections set forth in Paragraph 12.  Urman's original counterclaim made no effort to do so and, now, Urman's amended counterclaim again ignores the issue.  Urman's allegations do not support a claim for breach of contract arising out of Paragraph 12 of the Agreement, and the Court can and should grant Smash's motion to dismiss.

Third, in its "Response to Plaintiff's Motion to Dismiss Counterclaim," Urman stated that the gist of Smash's argument was that "Urman failed to notify Smash that it should not misappropriate trade secrets" and countered that Urman "has no duty to notify Smash that it should not misappropriate trade secrets."  (Dkt. 12 at ¶¶ 2-3.)  This argument intentionally misstates Smash's position.  If Urman wants to bring a counterclaim based on Smash's alleged violation of Paragraph 12, then Urman is required to allege facts showing when and how it complied with Paragraph 12 in order to avail itself of the related safeguards set forth in that provision.  Urman has now had two chances to do so, but has failed on each occasion to demonstrate its compliance with Paragraph 12.  The logical inference is that Urman does not have any factual evidence whatsoever to support its claim and is simply unable to articulate a breach of contract claim.  The Court can and should grant Smash's motion without leave to amend.

### 2.  Urman Does Not Allege A Violation Of Paragraph 8.2

Urman also alleges that Smash's conduct also constitutes a breach of Section 8.2 of the Agreement, which requires Smash "at all times during the continuance of the Agreement act toward [Urman] dutifully and in good faith."  This argument fails as well, because the claim that Smash violated Paragraph 8.2 of the Agreement is predicated on the same allegations supporting Urman's flawed theory that Smash violated Paragraph 12. (See Am. Counterclaim at ¶ 94 ["Smash

10

breached its agreement to act toward Urman dutifully and in good faith when it used information that it knew was confidential information belonging to Urman"].)  Put another way, Urman alleges that *because* Smash breached Paragraph 12 it also breached Section 8.2.  For the reasons set forth above, Urman fails to plead in its Amended Counterclaim that it complied with Paragraph 12's requirement that it affirmatively identify "Information."  Thus, and following Urman's own logic, Urman cannot allege that Smash violated Paragraph 8.2 when it cannot allege a predicate violation of Paragraph 12.

## V.     URMAN FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Urman's second amended counterclaim is for "tortious interference with business relations."  (Am. Counterclaim ¶¶ 99-107.)  In order to succeed on a tortious interference with contract claim, a plaintiff must prove the following elements:  (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) that proximately causes damage; and (4) actual damage or loss."  *Specialties of Mex, Inc. v. Masterfoods USA*, 2010 WL 2488031 at *9 (S.D. Tex., June 14, 2010), citing *All Am. Tel, Inc. v. USLD Come's*, 291 S.W.3d 518, 51 (Tex. App. Fort Worth 2009, pet. denied).[2]  As demonstrated below, Urman's Amended Counterclaim falls far short of this pleading standard.

### 1.     Urman's Tortious Interference Claim Is Not Plausible

A review of Urman's allegations and the supporting exhibits confirms that Urman's tortious interference claim is simply not plausible.  As Urman itself stated in its response to Smash's motion to dismiss, to survive a challenge under Rule 12(b)(6) "a complaint does not need

---

[2] Urman's response to Smash's motion to dismiss the original Counterclaim agrees that Urman must demonstrate these factors to establish this claim.  (Dkt. No. 12, ¶¶ 45-46.)

detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief –
including factual allegations that when assumed to be true raise a right to relief above the
speculative level." *Pendleton v. Prairie View A & M Univ.*, 121 F.Supp.3d 758, 759-60 (S.D. Tex.
2015) (internal quotes and citations omitted); (Dkt No. 12 at ¶ 40.)   To be consistent with Rule
8(a), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief
that is plausible on its face….The plausibility standard is not akin to a probability requirement,
though it does require more than simply a 'sheer possibility' that a defendant has acted
unlawfully." (Id.)

Here, Urman alleges that Ordonez stole Urman's customer list and gave it to Smash "on
January 16 or 17, 2016." (Am. Counterclaim ¶ 72.)  Urman also alleges that on January 21, 2016,
Smash's managing director nonetheless asked Urman to provide the customer list in order to
"legitimize with a cover-up the information he already had from Ordonez."  (Id. ¶ 75.)  Urman
refused to provide this information, and, therefore, Smash began calling customer contacts
contained on the list that Ordonez provided, and started stealing orders from Urman.  (Id. ¶¶ 77-
89.)  Urman's Amended Counterclaim specifically references two emails in support of this
premise, however, a fair review of the emails confirms that <u>neither</u> supports Urman's position.

<u>First</u>, Urman references and attaches a February 5, 2016 email exchange between Peter
Abbott of Smash and Annette Carrasco, who Urman describes as a buyer for HEB.  That email
(Exhibit 6) is referenced in support of the proposition that "Smash convinced [customer] HEB to
cancel its order with Urman and to place the order with Smash."  (Id. ¶ 77.)  A close review of the
email confirms that it does not support Urman's proposition at all, as follows:

- <u>Urman is copied on both emails within Exhibit 6</u>.  Both Abbot's email to Carrasco and

12

her reply to Abbott copy Karla Castrejon, who is an Urman employee.[3]  The fact that Smash 'looped in' Urman on such communications is fundamentally incompatible with Urman's theory that Smash was effectively contacting Urman's customer base behind its back.  It is similarly incompatible with Urman's theory that Smash was trying to conceal the fact that it possessed contact information for certain individual buyers.

- Urman's description of the email is not credible.  The Amended Counterclaim alleges that Abbott's email "convinced HEB to cancel its order with HEB."  However, a fair reading of the email confirms that it was sent to transition the customer relationship from Urman to Smash following Smash's termination of the Agreement.  In his email, Abbott informs HEB that "*[Smash] and Urman are working together currently to make sure your business is prioritized and we deliver your goods on time*" that "*official orders can come through after we [Smash] have been set up as a new supplier*" and that "*Smash Enterprises recognizes the hard work Urman has done over the past 5 years and if possible we will find a way to keep Urman servicing your account in some capacity.*"  (Emphasis added.)  Again, these statements, made in an email sent to Urman as well as HEB, do not support a tortious interference claim.

Second, Urman alleges that "on February 4, 2016" Abbott contacted Cristina Doyle, a buyer at The Container Store, "representing that Urman was not authorized to sell Smash products."  (Id. ¶ 81.)  However, Urman bases these allegations on a single statement in an email from Doyle to (Urman employee) Castrejon which does not reference Abbott in any way.  (See Exhibit 7 ["We received an email from someone with Smash brands and were told you are not

---

[3] Urman's Amended Counterclaim describes Castrejon as an Urman employee.  (Am. Counterclaim ¶ 77.)

13

authorized to sell the Smash products"].)  Once again, Urman's position is based on speculation.

In light of the above, Urman is attempting to advance a theory that defies reason.  As noted, Urman alleges that on January 21, 2016, Smash tried to obtain Urman's customer list directly from Urman despite having already obtained it from Ordonez.  Approximately two weeks later, Smash employee Abbott is alleged to have surreptitiously contacted a customer for the purpose of interfering with Urman's business relations, but nonetheless copied an Urman employee on that communication.  Urman's theory is therefore based on the premise that at the same time Smash was trying to 'cover up' the fact that it already possessed Urman's customer list, Smash was freely including Urman on communications with buyers whose contacted information Smash stole (and thereby 'exposing' the underlying conspiracy with Ordonez).  Urman's position stretches logic beyond breaking point.  The Court should grant Smash's motion.

### 2.  Urman Does Not Demonstrate That Smash Willfully And Intentionally Interfered With Existing Customer Contracts

In addition, the Amended Counterclaim does not demonstrate that Smash took an active part in persuading a party to breach an <u>existing</u> contract with Urman.  Even taking Urman's spurious allegations as true, Smash's conduct does not give rise to liability.  Texas courts have held that to demonstrate "willful or intentional interference," a party must be more than a willing participant; it must knowingly induce one of the contracting parties to breach its obligations."  *See Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993).  "A necessary element of the plaintiff's cause of action is a showing that the defendant *took an active part in persuading a party to a contract to breach it.*"  *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 803 (1987), cert. dism'd, 485 U.S. 994 (1988).  That is, "[m]erely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same thing as inducing a breach. It is necessary that there be some act of interference or of persuading a party to breach, for example,

14

by offering better terms or other incentives, for tort liability to arise." Id.

Here, Urman's allegations do not allege that Smash engaged in willful or intentional interference with existing contracts between Urman and third party customers.  Urman merely alleges that it previously sold Smash products to third party customers – i.e., while it was an authorized distributor of Smash's products.  (Am. Counterclaim at ¶¶ 79, 80, 85, 86.)  At best, Urman's allegations indicate that it was negotiating with customers on the expectation that it would be able to continue to sell Smash's products.  However, those allegations are insufficient to demonstrate that Smash caused a customer to breach existing contractual obligations owed to Urman.  Similarly, Urman's counterclaim fails to allege that Smash engaged in any interfering conduct, such as offering better terms or incentives, in order to induce such a breach.

Overall, Urman's Amended Counterclaim does not give rise to a valid claim for tortious interference.  The Court can and should grant Smash's motion to dismiss without leave to amend.

## VI.   URMAN FAILS TO STATE A CLAIM UNDER THE TEXAS UNIFORM TRADE SECRETS ACT

Urman's Amended Counterclaim sets forth an additional claim for violations of the Texas Uniform Trade Secrets Act.  (¶¶ 108-115.)  However, Paragraph 25.1 of the Agreement confirms that the parties agreed that Australian law would apply to the interpretation of the Agreement and the "relationship between the parties," as follows:

> 25.1    This Agreement and the relationship between the parties shall be governed by and interpreted in accordance with Australian law…

In light of the above, Urman cannot bring a claim against Urman under the Texas Uniform Trade Secret Act.  A diversity court generally applies the choice-of-law rules of the state in which it sits.  *Delhomme Industries, Inc. v. Houston Beechcraft*, 669 F.2d 1049, 1052 (5th Cir. 1982). Texas recognizes valid choice-of-law clauses.  *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414,

421 (1984).  Here, Urman agreed to be bound by the law of Australia when it entered into the

Agreement.  Given that Smash is an Australian corporation based in Australia, Australian law

clearly bears a reasonable relationship to the parties and their transactions.  *See also* Tex. Bus. &

Com. Code Ann. § 1.301, subd. (a) ("when a transaction bears a reasonable relation to this state

and also to another state or notion the parties may agree that the law either of this state or of such

other state or nation shall govern their rights and duties").  Furthermore, it is clear that Urman's

claim for misappropriation of trade secrets arises out of the parties' relationship which, in turn,

stems from the Agreement itself.  Thus, the Court can and should dismiss Urman's counterclaim

brought under the Texas Uniform Trade Secrets Act because the parties previously agreed in

writing that Australian law, rather than Texas law, would govern both the Agreement and their

resulting business relationship.


## VII.   URMAN FAILS TO STATE A CLAIM FOR CONSPIRACY TO VIOLATE THE COMPUTER FRAUD AND ABUSE ACT

Urman's third amended counterclaim is brought under the Computer Fraud and Abuse Act

("CFAA"), 18 U.S.C. § 1030.  The CFAA prohibits, among other conduct, the unauthorized access

to a "protected computer for the purposes of obtaining information, causing damage, or

perpetrating fraud."  *Quantlab Techs. Ltd (BVI) v. Godlevsky*, 719 F.Supp.2d 766, 774 (S.D. Tex.

2010).  A "protected computer" is a "computer…used in or affecting interstate or foreign

commerce or communication."  18 U.S.C. § 1030(e)(2)(B).  The CFAA is a criminal statute, but

civil actions are authorized for some violations of its substantive provisions.  *Fiber Sys. Int'l, Inc.

v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir.2006).  Section 1030(g) provides that:

> Any person who suffers damage or loss by reason of a violation of this
> section may maintain a civil action against the violator to obtain
> compensatory damages and injunctive relief or other equitable relief. A civil
> action for a violation of this section may be brought only if the conduct

16

> involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).

The only subclause potentially applicable here is subclause (I), which covers "loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Urman also references this subclause in its Amended Counterclaim. (¶ 122.) For the reasons set forth below, Urman's CFAA claim against Smash is fundamentally flawed and must be dismissed:

First, while Urman seeks to impose liability on Smash under the theory that it conspired with Ordonez "to obtain Urman's customer contacts which were stored on Urman's computer system" (Am. Counterclaim, ¶ 123), the allegations are insufficient to maintain a conspiracy claim under CFAA. Federal courts generally require specific allegations of an agreement and common activities to allow conspiracy claim under CFAA. *See Trademotion, LLC v. Marketcliq, Inc.,* 857 F.Supp.2d 1285, 1294 (M.D.Fla.2012) (recommending dismissal of § 1030(b) claim due to lack of facts showing "a knowing agreement with another to commit the unlawful act"); *Vacation Club Servs., Inc. v. Rodriguez,* No. 6:10–cv–247, 2010 WL 1645129, at **1–2 (M.D. Fla. Apr. 22, 2010). The Amended Counterclaim simply does not contain any substantive allegations as to how Smash and Ordonez entered into an agreement that would result in liability under CFAA. The Court should dismiss the CFAA against Smash as a result.

Second, the Amended Counterclaim fails to allege that Ordonez took information from a "protected computer." Urman does not state that its computers are used in interstate commerce and communication, as the statute requires. 18 U.S.C. § 1030(e)(2)(B). This, too, is fatal to Urman's CFAA claim and warrants dismissal.

Third, the Amended Counterclaim does not allege a cognizable loss under the CFAA. Under the statute, the term "loss" means:

17

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).  Thus, under the CFAA "the term 'loss' encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption."  *Quantlab Techs. Ltd.*, citing *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F.Supp.2d 468, 472 (S.D.N.Y. 2004), aff'd, 166 Fed.Appx. 559, 562-63 (2d Cir. 2006).  Here, however, Urman claims that Ordonez's alleged theft of the customer list from Urman's computer system caused it harm because the list is "worth more than $5,000.00" and because it has "suffered economic damages in the form of lost business of more than $500,000.00 to date and continuing." (¶¶ 129-130.)  This is not the sort of harm for which an aggrieved party may recover damages under the CFAA.

///

///

///

///

///

///

///

///

///

///

///

///

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Smash respectfully submits that the Court should grant its motion and dismiss Urman's counterclaims for breach of the Agreement (count 1), for tortious interference with business relations (count 2), for violations of the Texas Uniform Trade Secrets Act (count 3), and for violations of the CFAA (count 4) under Federal Rule of Civil Procedure 12(b)(6).

Dated:  April 28, 2016

Respectfully Submitted

HEATH & STEINBECK, LLP


By:   _/s/ *Steven A. Heath*_____
        Steven A. Heath (admitted *pro hac vice* and
        'attorney-in-charge')
        5777 W. Century Blvd.
        Suite 1670
        Los Angeles, California 90045
        Tel:        (213) 335-6245
        Fax:        (213) 335-6246
        saheath@heathsteinbeck.com
        *Attorneys for Plaintiff and Counterclaim*
        *Defendant Smash Enterprises Pty. Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is Heath & Steinbeck, LLP, 5777 W. Century Blvd, Suite 1670, Los Angeles, CA 90045.

On April 28, 2016, I served the **PLAINTIFF AND COUNTERCLAIM DEFENDANT SMASH ENTERPRISES PTY LTD.'S MOTION TO DISMISS AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P 12(b)(6)** on the interested parties in this action:

☒    **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**
The document was served on the following via The United States District Court – Southern District of Texas's CM/ECF electronic transfer system which generates a Notice of Electronic Filing upon the parties, the assigned judge, and any registered user in the case:

William C. Ferebee
wferebee@ofmflaw.com
O' Donnell, Ferebee & Frazer, P.C.
Two Hughes Landing
1790 Hughes Landin Blvd., Steui 550
The Woodlands, Texas 77380
Tel: 281-875-8200
Fax: 281-875-4962
*Attorneys for Defendant and Counterclaim Plaintiff*
*Urman, Inc. and Defendant Manuel Del Castillo*

I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 28, 2016, here, at Los Angeles, California.

*/s/ Steven A. Heath*