UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SMASH ENTERPRISES PTY LTD., an Australian corporation, § § § Plaintiff, § § vs. § § URMAN, INC., a Delaware corporation; § and MANUEL DEL CASTILLO, an § individual, § § Defendants. § § AND RELATED COUNTERCLAIM § | Cause No. 4:16-cv-00490  Hon. Alfred H. Bennett  [No Oral Argument Requested Unless Required By The Court] |

**PLAINTIFF AND COUNTERCLAIM DEFENDANT SMASH ENTERPRISES PTY LTD.'S REPLY BRIEF IN SUPPORT OF ITS PENDING MOTION TO DISMISS**

A.     **Urman Cannot State A Claim For Breach Of The Distribution Agreement**

In its Motion to Dismiss ("Motion"), Smash demonstrates that Urman's Amended Complaint fails to assert (1) a violation of Paragraph 12 of the Agreement, because Urman did not identify any information as confidential, as the Agreement affirmatively requires or (2) a violation of Paragraph 8, because that claim is based entirely on the flawed claim that Smash violated Paragraph 12. Urman's Response is unconvincing, as demonstrated below.

First, Urman, once again misstates Smash's position by claiming that Smash contends that the violations of Paragraph 8 and 12 are "totally independent of each other." (Response at ¶ 4.) As set forth in the motion, the opposite is true: Urman claims that because Smash breached Paragraph 12, it necessarily breached Paragraph 8. Lacking, however, a predicate violation of Paragraph 12, Urman simply cannot demonstrate a related (not separate) violation of Paragraph 8.

Second, Urman "agrees that it did not voluntarily give Smash its customer information and therefore did not notify Smash that its customer information needed to be protected pursuant to Paragraph 12." (Response at 7.) In so doing, Urman concedes that its contract claim lacks merit. Paragraph 12 requires a party to "identify" its confidential information and Urman now admits that it did not comply with the provision. No claim under Paragraph 12 exists.

Third, and improperly introducing new factual allegations through its briefing, Urman claims that "Smash prevented Urman from identifying confidential information in accordance with paragraph 12.2." This naked assertion does not appear credible. Regardless, there is no allegation in Urman's Counterclaim alleging that Smash prevented Urman from designating information as confidential and Urman cannot 'cure' its deficient pleading through its Response brief. (*See Estes v. JP Morgan Case Bank, Nat. Ass'n* 613 F.App'x 277, 280 (5th Cir. 2015) ("[W]hen deciding a Rule 12(b)(6) motion, a district court generally 'must limit itself to the contents of the pleadings, including attachments thereto.'").

1

**B.      Urman Cannot State A Claim For Tortious Interference With Business Relations**

In its Motion, Smash demonstrates that Urman's intentional interference claim fails because (1) Smash copied Urman on the offending emails sent to customers and (2) Urman fails to allege that Smash interfered with existing contracts. Urman's Response is unavailing.

First, Urman notes that its Counterclaim pleads that Smash stole the trade secrets in January 2016 and copied Urman on emails in February 2016. Even if true, this is unavailing. The notion that Smash conspired with Ordonez to surreptitiously steal Urman's trade secrets constitutes the backbone of Urman's Counterclaim. Urman goes so far as to allege that Smash's CEO emailed Urman on January 21, 2016 asking for the trade secrets to conceal the fact that Smash already had them, and that Smash then began contacting Urman's customers to steal orders and business. (Am. Counterclaim at ¶ 75.) Urman's position – and its credibility – unravels when one considers the fact that its own exhibits demonstrate that Smash copied Urman on the allegedly offending emails to customers. Urman's theory is implausible and the Court should dismiss the counterclaim.

Second, Urman ignores the fact that its Counterclaim does not allege, as it must, that Smash knowingly induced a customer to breach an existing obligation to Urman. Even at its second attempt to state a claim, Urman's pleading does not allege actual interference, that Smash persuaded a party to affirmatively breach, or that Smash offered better terms or incentives. Urman simply repeats its claim that Smash stole Urman's trade secrets with the intent of interfering with contracts. However, there is simply no logical nexus between Urman's allegations and its asserted damages. Urman's allegations are insufficient and the Response does not demonstrate otherwise.

**C.      Urman Cannot Bring A Claim Under The Texas Uniform Trade Secrets Act**

In its Motion, Smash demonstrates that the Agreement contains an Australian choice of law provision, which states "[t]his Agreement and the relationship between the parties shall be

2

governed by and interpreted in accordance with Australian law." Urman does not contend otherwise, nor could it. Instead, Urman asks the Court to apply an incorrect standard in order to set aside the parties' agreed choice of law and impose Texas law instead.

<u>First</u>, Urman claims that public policy requires the Court to apply Texas law. This is incorrect, as is Urman's asserted standard. In the context of commercial transactions, the Texas Commercial Code provides that where "a transaction bears a reasonable relation to this state and also to another state or nation" the parties may "agree that the law either of this state or of such other state or nation shall govern their rights and duties." (Motion at p. 21, citing ["Tex. Bus & Com. Code Ann. § 1.301, subd. (a)]; *see also El Pollo Loco, S.A. De C.V. v. El Pollo Loco, Inc.*, 344 F. Supp.2d 986, 989 (upholding Mexican choice of law provision under Tex. Bus & Com. Code Ann. § 1.301 on grounds that "there is a reasonable relationship between the Agreement and Mexico, and there is no evidence that Mexican law is contrary to a fundamental policy of Texas…").) Here, Urman cannot credibly contend that the parties' relationship <u>does</u> <u>not</u> bear a <u>reasonable</u> relationship to Australia. Nor does Urman contend that Australian law runs counter to Texas public policy. Certainly, Urman does not dispute that Smash is based in Australia, or that Urman knew this when it entered into the Agreement, or that the parties agreed that Australian law would apply to both the Agreement and the parties' resulting (commercial) relationship. With this in mind, Urman's request to apply Texas law would subvert, rather than promote, public policy, as well as ignore the Agreement's plain and unambiguous language.

<u>Second</u>, Urman concedes that it will face no prejudice if the Court upholds the parties' designated choice of law, in that it may assert a claim for misappropriation of trade secrets under Australian law. (Response at ¶ 17; *see also El Pollo Loco*, F. Supp.2d at 989 [choice of law provision stating that Mexican law governed "[a]ll disputes which may arise in connection with

the performance of this Agreement" also applied to tort claims arising out of the parties' relationship].)  The Court should dismiss Urman's trade secrets claim under the Texas Uniform Trade Secrets Act and uphold the parties' decision to designate Australian law.

Third, Urman's request for the Court to refrain from ruling on the choice of law issue at this time lacks merit, because the authority Urman cites is inapposite.  In *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 649 (S.D. Tex. 2009), the Court assessed applicable law with regard to the multiple factors set forth in the Restatement (Second) of Conflict of Laws.  (*Id.*)  The Court expressly noted that those factors would apply "unless there is a valid choice of law clause."  (*Id.*)  Ultimately, the Court found that it could not make a determination as to controlling law at the pleading stage given the complexity of the facts.  (*Id.* at 649.)  Here, of course, there is a valid choice of law clause, and the governing standard is that set forth in the Commercial Code, and not the Restatement.  Urman offers no compelling reason as to why the Court should not find the choice of law provision to be valid at this juncture.

### D.     Urman Cannot Bring A Claim Under The Computer Fraud And Abuse Act

In its motion, Smash demonstrates that Urman's claim under the CFAA is flawed because (1) Urman does not properly allege a conspiracy; (2) the Counterclaim does not allege that Ordonez took information from a "protected computer;" and (3) Urman does not allege a cognizable loss under the statute.  Urman's attempt to rebut these arguments fails.

First, and once again attempting to rewrite Smash's argument to suit its own ends, Urman claims that Smash asserts that "the Amended Counterclaim does not contain substantive allegations as to how Smash and Ordonez entered into an agreement to *misappropriate Urman's trade secrets*."  (Opp. at ¶ 18 [emphasis added].)  This is inaccurate.  Smash's motion asserts that the allegations do not maintain a conspiracy under the CFAA.  As explained in the motion, this

4

requires specific allegations of an agreement to commit activities proscribed under the statute. Urman ignores this point entirely and thus concedes the issue.

<u>Second</u>, Urman concedes that it failed to properly allege that Ordonez took the information at issue from a "protected computer." (Opp. at ¶ 19.) Once again, Urman improperly seeks to use its opposition brief to 'fill in the gaps.' (*Estes v. JP Morgan Case Bank, Nat. Ass'n* 613 F.App'x at 280 (5th Cir. 2015).) Doing so does not save Urman's deficient claim.

<u>Third</u>, Urman cannot allege damages under the CFAA. As explained in Smash's Motion, the term "Loss" under the CFAA means either costs to investigate and respond to a computer intrusion or costs associated with a service interruption. (*Quantlab Techs. Ltd (BVI) v. Godlevsky*, 719 F.Supp.2d 766, 774 (S.D. Tex. 2010).) In *Quantlab Techs, Ltd.*, this Court dismissed a claim under the CFAA because "Quantlab's assertions of its losses are entirely conclusory." (*Id.*) Specifically, the Court found that "the Complaint does not allege an interruption of service as a result of Kuharsky's actions, not any investigation or response to Kuharsky's alleged access of the computer." (*Id.*) Here, and similarly, Urman's Counterclaim does not allege that it suffered costs to investigate and respond to an intrusion or interruption-related costs. Urman's Response simply states that its pleading says that it suffered damages, which is precisely the type of conclusory statement that the Court in *Quantlab Tech, Ltd.* found to be insufficient.

**E.** <u>Conclusion</u>

For the reasons set forth in its Motion and above, Smash respectfully requests that the Court grant its Motion in its entirety.

///

///

///

5

Dated:  May 16, 2016 Respectfully Submitted

                                            HEATH & STEINBECK, LLP


By:  __/s/ *Steven A. Heath*_____
     Steven A. Heath (admitted *pro hac vice*)
     Uyen N. Nguyen (admitted *pro hac vice*)
     5777 W. Century Blvd.
     Suite 1670
     Los Angeles, California 90045
     Tel: (213) 335-6245
     Fax: (213) 335-6246
     saheath@heathsteinbeck.com
     *Attorneys for Plaintiff and Counterclaim Defendant Smash Enterprises Pty. Ltd.*

# CERTIFICATE OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is Heath & Steinbeck, LLP, 5777 W. Century Blvd, Suite 1670, Los Angeles, CA 90045.

On May 16, 2016, I served the **PLAINTIFF AND COUNTERCLAIM DEFENDANT SMASH ENTERPRISES PTY LTD.'S MOTION FOR LEAVE TO FILE A REPLY BRIEF IN SUPPORT OF ITS PENDING MOTION TO DISMISS** on the interested parties in this action:

☒ **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**
The document was served on the following via The United States District Court – Southern District of Texas's CM/ECF electronic transfer system which generates a Notice of Electronic Filing upon the parties, the assigned judge, and any registered user in the case:

William C. Ferebee
wferebee@ofmflaw.com
O' Donnell, Ferebee & Frazer, P.C.
Two Hughes Landing
1790 Hughes Landin Blvd., Suite 550
The Woodlands, Texas 77380
Tel: 281-875-8200
Fax: 281-875-4962
*Attorneys for Defendant and Counterclaim Plaintiff*
*Urman, Inc. and Defendant Manuel Del Castillo*

I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 16, 2016, here, at Los Angeles, California.

*/s/ Steven A. Heath*

1